## Case No. 13,068.

### SMITH v. JORDAN.

### HITCH et al. v. SAME.

[Brunner, Col. Cas. 627; [1] 21 Law Rep. 204.]

Circuit Court, D. Massachusetts. May Term. 1857.

APPEAL—DAMAGES—SEAMEN—DISRATING.

1. In a case of marine tort the decree of the district court will not be reversed on appeal on a question of the amount of damages, unless it is clearly excessive.

2. The power of the master to disrate an officer or seaman is remedial and not penal, and does not authorize a degradation to the lowest place, if there is an intermediate office which the man may be supposed competent to fill.

[Appeal from the district court of the United States for the district of Massachusetts.

[These were libels by Edward Jordan against James L. Smith and Charles Hitch and others for marine torts, and subtraction of wages. From a decree in favor of libelant in the district court (case unreported), respondents appealed.]

L. F. Brigham, for appellants.

C. M. Ellis, contra.

CURTIS, Circuit Justice. The first of these cases was an appeal by the respondent in a suit in admiralty, brought by the appellee in the district court for several marine torts, on account of which that court pronounced for damages in the sum of four hundred and sixty-five dollars. The libelant shipped as cooper at New Bedford, in May, 1852, for a whaling voyage, on board the bark Cleora. He has pleaded that he was unlawfully put in irons and imprisoned in the afterhold of the ship; that this imprisonment was continued for about the space of four months, during some part of which time, however, he was allowed to be on deck during the day; that it was accompanied by circumstances of degradation and cruelty; and that on the 17th day of January, 1854, he was forced on shore at Lahababoo, an island in the Pacific Ocean inhabited only by savages, whence he made his escape, through the humanity of the master of a British vessel, which was there to procure some supplies. The respondent admits that the libelant was unlawfully set on shore; but has attempted to justify the imprisonment on the ground that the libelant, being found indisposed to do his duty as cooper, was disrated, and ordered before the mast; that he refused to perform the duty of a foremast hand, and thereupon was imprisoned. In the second case, wherein the opinion will presently be stated, I have fully considered the question whether the master was justified in requiring the libelant to perform foremast hand's duty, and having come to the conclusion that he was not, it necessarily follows that the measures resorted to, to compel the libelant to do that duty were unjusti-

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

fiable. It appears, upon this view of the case, and upon the admission of the respondent, that he unlawfully set the libelant on shore, and that this appeal involves a question of the quantum of damages due for aggravated marine torts. I have had several occasions to say, what I here repeat, that in such a case I cannot reverse the decree of the district court, unless I can see that the damages are plainly excessive. No two minds would come to the same result upon such a question, viewed as res integra, and when the court of the first instance has fairly exercised its judgment upon no erroneous principle, it is not cause for reversing it, that, viewed as an original question, I might, and probably should, have come to a somewhat different result. In this case I am not dissatisfied with the amount of damages, and the decree is affirmed, with costs.

The second case is a cause of subtraction of wages. The lay of the libelant as cooper was to be one fortieth. The district court pronounced for wages, but did not allow that lay to the libelant. Both parties appealed. The case presents two principal questions. First, whether the libelant was lawfully disrated, and if so, what deduction ought to be made from his lay by reason thereof.

It is admitted by the respondents that the libelant "was a fair cooper." I consider this to amount to an admission that he was competent in point of ability to do the duty for which he was engaged. It is pleaded by the respondents "that the libelant, after a fair trial of his abilities and disposition to do his duty as cooper, being found indisposed to do such duty, was disrated from the station of cooper, and ordered to do foremast hand's duty." If a person contract to perform a particular service on shore, and prove incapable or negligent, the employer may dismiss him, but cannot require him to do other work not included in his contract. The necessities of the sea services have occasioned a different rule in the maritime law. The services of each of the crew are necessary, there being ordinarily no supernumeraries on board; and the master must keep and provision the men, and bring them home. Consequently when he removes one man from his station for sufficient cause, and promotes another to his place, the services of the man who is disrated are needed to supply the deficiency occasioned by such promotion; and as the man must continue on board, he is required by the maritime law to obey the lawful commands of the master, and perform such work as he is capable of doing, and as the master may assign him in the just exercise of his authority, and this rule of law may be properly said to qualify the express contract for service by superadding to it the condition that in case of inability or indisposition to perform it the man will do such other service on board during the voyage as the master may properly assign to him.

The first inquiry in this case is whether the libelant after a fair trial was found indisposed to perform his contract. The station of cooper on board a whale ship is one of much responsibility. Negligence in discharging its duties must inflict loss upon all concerned in the voyage, and may seriously impair, and even destroy, the fruits of the enterprise. The large lay of one fortieth, exceeding that of any other person on board, save the master and first and second officers, clearly indicates that skill and diligence of no ordinary character were contracted for. The necessity for having this service well performed, and the difficulty of replacing the cooper in the course of the voyage, rendered it for the interest of the master, who was interested in the enterprise to the extent of one twelfth, not to remove the cooper without adequate cause. The officers and crew have the same interest, though less in degree. Upon the evidence, I find that there was a general opinion among the officers that the libelant did not discharge his duties satisfactorily. There is evidence of two specific instances of neglect; but of these, two of the witnesses who speak of them admit that the oversight might have been made by any cooper. On the other hand, the conduct of the master towards this man evinces a strong personal dislike, which appears to have originated some time before he was disrated, and which was very unfavorable to a just and calm consideration of his case. Nor does he appear to have remonstrated with, or reproved him for any instance of neglect before he was disrated. There is also a wide discrepancy as to the time when he was disrated, between the answer of the claimants and the answer of the master printed in the same record, and the accounts of the making up of the voyage. The answer of the claimants seems to fix the 9th of February as the date, though its allegations are very loose and imperfect. The answer of the master says he was disrated on the 23d of July, while the accounts show the promotion of another man to the place of cooper on the 6th of April. It is the duty of the respondents to plead the cause for and the fact of disrating, with reasonable certainty, and to prove it as alleged, in all necessary particulars. The libelant having taken no exception, and both parties having gone into proofs on this appeal, I do not reject the allegation. But such uncertainty upon the point of time seriously enhances the difficulty of coming to a conclusion favorable to the respondents. It must be remembered, also, that, properly speaking, the displacement of a man from the position in which he contracted to serve is a remedial, and not a penal, act. The power is not conferred on the master so to punish for past offenses, but to prevent future injury arising from neglect or incompetency; and therefore, if it be found that the officer can no longer be intrusted with the duties of his place with safety to the interests involved, it does not follow that he is to be degraded to the lowest

place possible. He must be removed from his post as far as may be necessary, but no further; and in this particular I am satisfied the master did wrong. I think, upon all the evidence I cannot say the master was bound to retain the libelant in the place of cooper, with all the responsibility and control which belong to that place. But being a cooper of competent skill, as it is agreed he was, he should have been put into the subordinate place of cooper's mate, where he would have been under the supervision of the person promoted to his place, who could have taken care that his negligence occasioned no serious injury. It was urged that his fault being a want of disposition to do his duty, he could not be trusted at all; but it does not follow that occasional instances of neglect should necessarily destroy all confidence; and, at all events, I think the experiment of employing him under proper supervision should have been fairly tried. The power to take a mechanic from the work which he has contracted to do, and is able to do, on shipboard, and put him to perform what, it is admitted in this case, he was very ill-fitted for, is one to be used with much care and caution, and no further than shall appear to be necessary for the fair protection of the interests involved.

My opinion is that, though the libelant's insufficient performance of his duty as cooper should cause a proper deduction to be made from his wages from the date when another was promoted to his place, he should not have been deprived of the benefit of a fair trial in the place of cooper's mate, and consequently should receive the lay which appears by the ship's accounts to have been paid to the person who filled that place. Having made a computation, I find its result is the same sum allowed by the district court, which, I infer, acted on the same rule I have adopted.

Let the decree of the district court be affirmed, with six per cent damages and costs.